Gary D. Sesser
Mark R. Zancolli
CARTER LEDYARD & MILBURN LLP
Two Wall Street
New York, New York 10005
Telephone: (212) 732-3200
Facsimile: (212) 732-3232
Email: sesser@clm.com
        zancolli@clm.com
*Attorneys for Plaintiff*
*TransAtlantic Lines LLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

TRANSATLANTIC LINES LLC,                     :
                                             :
                              Plaintiff,     :   Case No.  *17 Civ. 998*
                                             :
                    v.                       :
                                             :
AMERICAN STEAMSHIP OWNERS                    :
MUTUAL PROTECTION AND INDEMNITY              :
ASSOCIATION, INC.,                           :
                                             :   **COMPLAINT**
                              Defendant.     :   **(JURY TRIAL DEMANDED)**
                                             :
                                             :
                                             :
                                             :
                                             :
                                             :

-------------------------------------------------------------X

        Plaintiff, TransAtlantic Lines LLC ("TAL"), by its attorneys, Carter Ledyard &

Milburn LLP, for its Complaint against Defendant, American Steamship Owners Mutual

Protection and Indemnity Association, Inc. (the "American Club" or "Club"), alleges as

follows:

## INTRODUCTION

        1.      This action arises from the Club's wrongful and bad faith denial of

coverage, under a maritime contract of protection and indemnity insurance issued by the

Club to TAL, for TAL's claims for loss, damage and expense resulting from a March 4,

2013 incident involving the "Atlantic Trader," a barge that TAL chartered from McAllister Towing and Transportation Co. Inc. ("McAllister") to transport U.S. Government cargo from Jacksonville, Florida to Guantanamo Bay, Cuba.

2.      TAL seeks damages and declaratory relief based on:   (1) the Club's rejection of TAL's claim for reimbursement of $100,000 paid by TAL in settlement of the claim by additional assured McAllister for attorneys' fees, which resulted from the decision of the Club to direct the attorney it appointed to represent TAL, Patrick Novak, Esq. of Horr, Novak & Shipp, P.A. ("Novak"), not to allow TAL to assume McAllister's defense of the third-party claim of Portus Stevedoring, LLC ("Portus"); (2) the Club's unjustified decision not to provide insurance cover for the U.S. Government's cargo claims against TAL; and (3) the Club's failure to honor TAL's claim for expenses in the sum of $107,336.69 paid by TAL to American Nautical Services, Norton Lily and Westerhaven Schiffahrt for the purpose of saving perishable cargo relating to the Atlantic Trader incident.

## PARTIES

3.      TAL is a Delaware limited liability company with its principal place of business at 6 Lincoln Avenue, Greenwich, CT 06830.  The membership interest in TAL is 100% owned by TransAtlantic Lines Holdings Inc.  TransAtlantic Lines Holdings Inc. is a privately owned corporation organized under the laws of the State of Delaware with its principal place of business in Connecticut.

4.      Upon information and belief, the Club is a corporation organized under the laws of the State of New York with its principal place of business at One Battery Park

Plaza, New York, New York.  The Club is subject to regulation by the New York State Financial Services Department.

**JURISDICTION AND VENUE**

5.      This court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332, as the parties are citizens of different states and the amount in controversy exceeds $75,000.  The court also has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1333, as this is an action for, *inter alia,* damages under an admiralty or maritime contract of protection and indemnity insurance.

6.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(a), as the Club resides in this district and is subject to personal jurisdiction in New York.  The Club also has consented to jurisdiction and venue in this district.

**FACTUAL BACKGROUND**

7.      TAL is a U.S. shipping company that owns, charters and operates vessels to perform shipping services such as transporting cargo to U.S. military bases at various locations.

8.      The Club is a mutual insurance association that provides protection and indemnity ("P&I") insurance cover for its shipowner and charterer members against third party liabilities relating to the use and operation of ships.

9.      Shipowners Claims Bureau, Inc. ("SCB") provides day to day management of the Club.  Upon information and belief, SCB operates as the Club's agent and legal department with respect to insurance claims submitted to the Club by its members, as SCB employs one or more lawyers among its staff.

10. On or about February 19, 2013, the Club issued a Certificate of Entry, No. 00801000, to TAL for Class I P&I Insurance cover with respect to the vessel "Guantanamo Bay Express" for the period from February 20, 2013 through February 20, 2014 (the "Certificate of Entry"). The Certificate of Entry provides in part that it "is evidence of the contractual indemnity insurance between [TAL] and [the Club]..."

11. In early 2013, TAL was having repair work performed on the Guantanamo Bay Express and needed a replacement barge to carry the U.S. Government's cargo between Jacksonville and Guantanamo Bay. Accordingly, in early 2013, TAL chartered the Atlantic Trader from McAllister pursuant to a bareboat charter party in which TAL accepted the Atlantic Trader "as is" and assumed responsibility for its condition.

12. TAL hired Portus to load the Atlantic Trader in Jacksonville, Florida.

13. By Endorsement dated February 28, 2013 to the Certificate of Entry, the Club extended Class I P&I Insurance cover under the Certificate of Entry to the Atlantic Trader with effect from February 27, 2013 (the "Endorsement"). Thereafter, by endorsement dated March 14, 2013, the Club cancelled insurance cover with respect to the Atlantic Trader with effect from March 14, 2013 as the barge was redelivered (the "Cancellation Endorsement").

14. McAllister was named as an "Additional Assured" in the Endorsement. The Endorsement provides in part:

> "MISDIRECTED ARROW" CLAUSE – "ATLANTIC TRADER"
>
> Notwithstanding the fact that McAllister Towing Co, Inc. are hereby named as additional assured in this Certificate of Entry, the cover of The Association [i.e., the Club] will only extend insofar as they may be found liable to pay in the first instance for loss or damage which is properly the responsibility of Transatlantic Lines Inc., and nothing herein contained shall be construed as extending cover in respect of any amount which

- 4 -

would not have been recoverable from the Association by Transatlantic Lines Inc. had the claim in respect of such loss or damage been made or enforced against him.  Once the Association has made indemnification under such cover, it shall not be under any further liability and shall not make any further payment to any person or company whatsoever, including Transatlantic Lines Inc., in respect of that loss or damage.

15.     The Certificate of Entry provides in part that it is "subject to the By-Laws and Rules of the Association [i.e., the Club]."  The P&I insurance coverage provided to TAL with respect to the March 4, 2013 Atlantic Trader incident is set forth in the Certificate of Entry, as amended by the Endorsement and the Cancellation Endorsement, and the Club's By-Laws and  Rules.  (The Certificate of Entry, as amended by the Endorsement and the Cancellation Endorsement, and the Club's By-Laws and Rules are hereinafter collectively referred to as the "Insurance Contract.")

16.     The Club Rules, Class I: Protection and Indemnity Insurance (the "Club Rules") provide in part:

### RULE 2        RISKS AND LOSSES COVERED

Each Member of the Association [i.e., the Club] shall be indemnified in connection with each vessel entered in the Association for Protection and Indemnity insurance against any loss, damage or expense which the Member shall become liable to pay and shall pay by reason of the fact that the Member is the owner (or operator, manager, charterer, mortgagee, trustee, receiver or agent, as the case may be) of the insured vessel, subject to the provisions of these Rules and to all the limitations herein stated or agreed to by the acceptance of the application for membership, or by the entry of the vessel, in the Association, and which shall result from the following liabilities, risks, events, occurrences and expenditures; provided that such liabilities, risks, events, occurrences and expenditures arise in respect of the Member's interest in such vessel; and in connection with the operation of such vessel by or on behalf of the Member; and out of events occurring during the period of entry of such vessel.

***
**Section 8        CARGO**

**Liabilities and costs set out in subsections 1 to 4 below when and to**

**the extent that they relate to cargo intended to be or being or having been carried in an insured vessel.**

**1      Loss, Shortage, Damage or Other Responsibility**

Liability for loss, shortage, damage or other responsibility arising out of any breach by the Member, or by any person for whose acts, neglect or default he may be legally liable, of his obligation properly to load, handle, stow, carry, keep, care for, discharge or deliver the cargo or out of unseaworthiness or unfitness of the insured vessel.

\*\*\*

**Section 17      SUE AND LABOR AND LEGAL COSTS**

**Extraordinary costs and expenses reasonably incurred after any casualty for the purpose of avoiding or minimizing any liabilities, costs or expenses against which the Member is insured by the Association.**

\*\*\*

**Section 18      EXPENSES OF INVESTIGATION AND DEFENSE**

**Liability for costs, charges and expenses reasonably incurred and paid by the Member in connection with any liability insured under this Rule, subject, however, to the same deduction that would be applicable by the terms of entry to the liability defended; provided that if any liability is incurred and paid by the Member as aforesaid, the deduction shall be applied to the aggregate of the claim and expenses; and provided further that the Member shall not be entitled to indemnity for expenses unless they were incurred with the approval in writing of the Managers, or the Managers shall be satisfied that such approval could not have been obtained under the circumstances without unreasonable delay, or that the expenses were reasonably and properly incurred; and provided further that any suggestion or approval of counsel, or any incurring of expenses in connection with liabilities not insured under this Rule, shall not be deemed an admission of the Association's liability.**

\*\*\*

(emphasis in original).

## The Club Controls Legal Representation of Its Members

17.     Rules 1.4.15 and 1.4.16 of the Club Rules provide that SCB not only has the right to hire and fire counsel on behalf of a member of the Club on such terms as SCB sees fit, but also to insist on counsel reporting to SCB as if the Club were the client. Rules 1.4.15 and 1.4.16 state as follows:

- 6 -

**General Conditions in Regard to Claims**

**15**     Without prejudice to any other provision of these Rules and without waiving any of the Association's [the Club's] rights hereunder, *the Managers* [i.e., SCB] *may at any and all times appoint and employ on behalf of a Member, upon such terms as the Managers may think fit, lawyers*, surveyors or other persons for the purpose of dealing with any matter liable to give rise to a claim by a Member upon the Association, including investigating or advising upon any such matter and taking or defending legal or other proceedings in connection therewith.   *The Managers may also at any time discontinue such employment if they think fit.*

**16**     *All lawyers*, surveyors and other persons appointed by the Managers on behalf of a Member, or appointed by a Member with the prior consent of the Managers, *shall at all times be and be deemed to be appointed* and employed on the terms that they have been instructed by the Member at all times (both while so acting and after having retired from the matter) *to give advice and to report to the Managers* in connection with the matter *without prior reference to the Member* and to produce to the Managers without prior reference to the Member any documents or information in their possession or power relating to such matter, *all as if such person had been appointed to act and had at all times been acting on behalf of the Association.* (emphasis supplied).

## McAllister's Attorneys' Fees

18.     On March 4, 2013, while the Atlantic Trader was on its way to Guantanamo Bay, the lashings failed and 22 shipping containers fell overboard.

19.     TAL reported the incident to the Club.  Pursuant to Rules 1.4.15 and 1.4.16 of the Club Rules, the Club exercised the right to appoint such lawyers "as the Managers think fit" to act on behalf of its Member, TAL.  On or about March 5, 2013, the day after the incident, the Club appointed Novak from its approved list of attorneys to act on behalf of TAL with respect to this incident.

20.     TAL suffered damages of $517,942.03 as a result of the incident, not including liability to the cargo interests.

21.     At the direction of Novak and the Club, TAL commenced an action against Portus for negligently loading the Atlantic Trader, entitled *TransAtlantic Lines LLC v. Portus Stevedoring LLC,* Case No. 14-cv-60528 (S.D.Fla.).

22.     Portus thereafter filed a third-party complaint against McAllister in that lawsuit, alleging that McAllister failed to deliver the Atlantic Trader to TAL in a seaworthy condition.

23.     By letter dated April 4, 2014, McAllister demanded that TAL defend and indemnify McAllister against the third-party claims asserted by Portus.

24.     Novak sent an email to SCB, acting on behalf of the Club, on April 21, 2014, with a copy to TAL, stating: "We are of the opinion the charter party is enforceable and it is likely McAllister will ultimately be entitled to indemnity from TAL." Nevertheless, Novak recommended in that email that "TAL decline McAllister's defense with the knowledge it may well be responsible to reimburse McAllister for its attorneys' fees and costs in defending the Portus claims."

25.     By email dated April 23, 2014 from Chuck Gornell of SCB to Novak with a copy to Gudmundur Kjaernested of TAL, the Club agreed with Novak's "recommendation that TAL should decline McAllister's defense." In that email, Gornell stated: "While it may well be that TAL will have to reimburse McAllister for attorneys' fees and costs in defending the Portus claim, that is not a given at this time."

26.     Because TAL chartered the Atlantic Trader from McAllister on an "as is" basis, TAL was responsible for the condition of the vessel in connection with its claim against Portus.  It therefore made no sense for TAL not to assume McAllister's defense and force McAllister to retain its own attorneys.  But when the decision was made to

- 8 -

decline McAllister's defense, neither Novak nor the Club warned TAL that if TAL declined to assume McAllister's defense, TAL would not be reimbursed by the Club for the attorneys' fees and costs incurred by McAllister.  At no time was TAL informed of any conflict of interest with the Club.  Upon information and belief, Novak assumed that the Club would reimburse TAL if it was found liable to McAllister.

27.     On July 17, 2015, the U.S. District Court for the Southern District of Florida granted McAllister's motion for summary judgment and dismissed Portus' third-party claim for contribution.  The court ruled that Portus' claim against McAllister was based on a breach of the implied warranty of seaworthiness, which TAL had waived in the bareboat charter party with McAllister.

28.     On August 12, 2015, counsel for McAllister submitted a claim to TAL for legal fees and costs in the amount of $111,644 in connection with McAllister's defense to the Portus claim.  McAllister demanded arbitration against TAL, and TAL subsequently settled the McAllister indemnity claim for $100,000.  After directing Novak not to assume McAllister's defense, the Club refused to reimburse TAL for the cost of its settlement with McAllister.

29.     On October 6, 2015, following a non-jury trial, the U.S. District Court for the Southern District of Florida issued Findings of Fact and Conclusions of Law which, *inter alia,* apportioned responsibility for the loss from the Atlantic Trader incident 60% to TAL and 40% to Portus.

30.     By letter dated November 25, 2015 from Christopher Dudley, TAL's Controller, to SCB's Chuck Gornell, TAL submitted to the Club a request for reimbursement in the amount of $127,617.39, which included the $100,000 payment to

- 9 -

McAllister in settlement of its indemnity claim for legal fees and expenses. By email dated December 23, 2015 from Mr. Gornell to Mr. Dudley, the Club rejected the $100,000 McAllister indemnity claim on the ground that it involved a "contractual dispute" that "did not involve the American Club."

31.     In his March 31, 2016 letter to Mr. Gornell, TAL's counsel explained that had the Club or its appointed counsel, Novak, warned TAL that it would not be reimbursed by the Club for McAllister's attorneys' fees and costs if TAL rejected McAllister's demand to assume its defense, TAL could have rejected Novak's recommendation that TAL refuse to assume McAllister's defense, and Novak would have been obligated to follow his client TAL's instructions, or TAL would have been entitled to independent counsel under the applicable ethics rules.

32.     Pursuant to internal review procedures, the Club's Board of Directors confirmed the denial of TAL's claim for reimbursement with respect to McAllister's attorneys' fees. Notably, the Board is comprised of members with a financial interest in denying TAL's claims. Moreover, the Board had no interest in accommodating TAL because TAL subsequently moved its insurance business to a competitor and is no longer a member of the Club.

**U.S. Government Cargo Claims**

33.     At the time of the March 4, 2013 Atlantic Trader incident, TAL was carrying U.S. Government cargo on the Atlantic Trader pursuant to a contract between TAL and the U.S. Government.

34.     The Club was aware that TAL was carrying U.S. Government cargo prior to the March 4, 2013 incident.

7911711.5

35.     From the time he was appointed by the Club, Mr. Novak was involved in the defense of the U.S. Government's cargo claims relating to the Atlantic Trader incident.  All of the U.S. Government Transportation Discrepancy Reports ("TDRs") outlining the U.S. Government cargo claims were sent to TAL and to the Club within one year after the March 4, 2013 Atlantic Trader incident, but those claims were not settled with the U.S. Government or filed in court within one year after the March 4, 2013 Atlantic Trader incident.  The Club was fully informed of all of the U.S. Government cargo claims before the one year anniversary of the loss.

36.     For example, by email dated July 17, 2013, Novak forwarded to Mr. Gornell and to TAL his firm's report and recommendations on two of the U.S. Government's cargo claims relating to the March 4, 2013 Atlantic Trader incident.

37.     On December 16, 2015, TAL received a request from the U.S. Government to settle some of the TDRs with regard to the Atlantic Trader incident.  By email dated December 17, 2015 from Mr. Dudley to Mr. Gornell, TAL asked the Club how it wanted TAL to handle the U.S. Government's request.  By email dated December 17, 2015, Mr. Gornell abruptly informed Mr. Dudley that the Club "is not involved" with these claims because they "have been filed well after they would have normally been time barred."

38.     In his email dated October 31, 2013, Mr. Gornell had stated that because "the terms of COGSA [Carriage of Goods By Sea Act] had been extended [by TAL] without obtaining any approval from the Club," TAL had breached the Club cover.

39.     In his April 8, 2016 letter to Mr. Gornell, TAL's counsel explained that the Club's premise – i.e., that TAL agreed to extend the otherwise applicable one year

COGSA limitations period without Club consent – is incorrect, as U.S. courts have ruled that the one year COGSA limitations period does not apply to claims brought by the U.S. Government.   Because the Government was never subject to the one year limitations period of COGSA, TAL did not agree to extend the limitations period without obtaining approval from the Club.   Further, had Novak simply asked the Club to extend the one year statute of limitations alleged by the Club, or had TAL paid the Government cargo claims, or had TAL commenced legal action concerning the U.S. Government's claims, then they would not have been time barred under the one year limitations period alleged by the Club.

40.   Again, the Club failed to warn TAL of its conflict of interest: i.e., that it was in the Club's interest to delay resolving the Government's cargo claims, but it was in TAL's interest to resolve them or put them in litigation within one year so they would be covered by insurance.

41.   The denial of TAL's claim for coverage with regard to the U.S. Government cargo claims relating to the Atlantic Trader incident was also confirmed by the Club's Board of Directors.

42.   Significantly, the Club included the U.S. Government's cargo claims in TAL's claims history, even after the one year COGSA statute of limitations alleged by the Club had passed, which negatively affected TAL's P&I renewal premiums.

- 12 -

**TAL Expenses To Save Perishable Cargo, Accepted By The U.S. District Court For The Southern District Of Florida As Damages, But For Which TAL Has Not Been Reimbursed By The Club**

43.     At the trial of TAL's action against Portus, Novak presented to the court a chart and backup documentation regarding expenses incurred by TAL as a result of the Atlantic Trader incident.

44.     TAL incurred certain expenses in the sum of $107,336.69 which the court approved as part of its damages award in TAL's lawsuit against Portus but for which TAL has not received reimbursement from the Club.  That $107,336.69 sum was paid by TAL to American Nautical Services, Norton Lily and Westerhaven Schiffahrt for the purpose of saving perishable cargo.  However, the Club denied TAL's claim for reimbursement of those expenses.

45.     Novak's firm received funds into its client trust account from Portus, representing its 40% share of the liability as determined in the judgment in TAL's action against Portus.

46.     By email dated April 7, 2016 from Chris Dudley of TAL to Novak, TAL requested that Novak remit to TAL $42,934.68 of the funds in Novak's trust account received from Portus.  Even though the Club had neither paid the expenses in the first instance nor reimbursed TAL for those expenses, by email dated April 8, 2016 from Chuck Gornell to Novak, the Club demanded that Novak remit to the Club the full amount of the funds paid by Portus and held in Novak's trust account.

47.     To date, neither the Club nor Novak has remitted to TAL either the full $107,336.69 of court approved expenses for which TAL has not been reimbursed from the Club, or the $42,934.68 portion of that sum that was paid by Portus.

- 13 -

48.     The Club's Board of Directors confirmed the denial of TAL's claim for the $107,336.69 of court approved expenses incurred by TAL to save perishable cargo, and the denial of TAL's claim for the $42,934.68 portion of that sum that was paid by Portus.

## AS AND FOR A FIRST CAUSE OF ACTION

### (Breach of Contract; McAllister's Attorneys' Fees)

49.     TAL repeats and realleges the allegations contained in paragraphs 1 through 48 as if fully set forth herein.

50.     At all relevant times, TAL was an insured member of the Club under the Insurance Contract.

51.     At all relevant times, TAL paid the required premiums and performed its obligations under the Insurance Contract.

52.     McAllister was named as an Additional Assured under the Endorsement, and the Club agreed to extend cover to McAllister for loss or damage "which is properly the responsibility of Transatlantic Lines, Inc." in the Endorsement.

53.     In TAL's suit against Portus for stevedore negligence, TAL was responsible for the condition of the Atlantic Trader under principles of comparative fault.

54.     McAllister was mistakenly and unnecessarily sued by Portus, which sought to hold McAllister responsible for TAL's loss by shifting responsibility for the Atlantic Trader incident to the condition of the vessel.

55.     Because Portus "misdirected the arrow" at McAllister for loss or damage relating to the condition of the vessel, which was properly the responsibility of TAL,

TAL's claim for reimbursement with respect to McAllister's attorneys' fees is covered by the Endorsement.

56.     The Club breached the Insurance Contract by denying TAL's claim for reimbursement with respect to McAllister's attorneys' fees. The Club's denial of TAL's claim for reimbursement with respect to McAllister's attorneys' fees constituted a breach of, *inter alia,* Rules 2.8, 2.17 and 2.18 of the Club Rules and the "Misdirected Arrow" clause of the Endorsement.

57.     Because of the Club's unreasonable delay until December 2015 to notify TAL of its denial of coverage, because of the Club's failure to warn TAL that TAL would not be reimbursed by the Club for the attorneys' fees and costs incurred by McAllister if TAL declined to assume McAllister's defense, and because of the Club's failure to inform TAL of the conflict of interest that arose between TAL's interests and the Club's interests when the Club elected to deny McAllister's request that TAL assume McAllister's defense, TAL suffered prejudice and, therefore, the Club was estopped from denying TAL's claim for reimbursement with respect to McAllister's attorneys' fees.

58.     As a result of the Club's breach, TAL has been caused to suffer damages in an amount to be proven at trial but not less than $100,000, plus interest and costs.

## AS AND FOR A SECOND CAUSE OF ACTION

### (Breach of Implied Covenant of Good Faith and Fair Dealing against the Club; McAllister's Attorneys' Fees)

59.     TAL repeats and realleges the allegations contained in paragraphs 1 through 48 as if fully set forth herein.

60.     At all relevant times, TAL was an insured member of the Club under the Insurance Contract.

7911711.5

61.     Implicit in the Insurance Contract is an implied covenant of good faith and fair dealing in which the Club covenanted that it would not do anything that would have the effect of destroying or injuring TAL's right to receive the benefits of the Insurance Contract.

62.     At all times prior to the Club's denial of TAL's claim for reimbursement with respect to McAllister's attorneys' fees on December 13, 2015, TAL reasonably expected that the Club would indemnify TAL for any payment to reimburse McAllister for its attorneys' fees and costs in defending against Portus' third party claim.

63.     When Novak and the Club made the decision for TAL to decline McAllister's defense of Portus' third-party claim in April 2014, neither Novak nor the Club warned TAL that if TAL declined to assume McAllister's defense, TAL would not be reimbursed by the Club for the attorneys' fees and costs incurred by McAllister.

64.     The Club's approximate 20 month delay in denying coverage in December 2015 for TAL's claim for reimbursement with respect to McAllister's attorneys' fees on the ground that it involved a "contractual dispute" that "did not involve the American Club" was unreasonable as a matter of law, as the Club was aware in April 2014 when it made the decision for TAL to decline to assume McAllister's defense that TAL had waived the implied warranty of seaworthiness in the Atlantic Trader charter party with McAllister.

65.     Had the Club warned TAL that it would not be reimbursed by the Club for McAllister's attorneys' fees and costs if TAL rejected McAllister's demand to assume its defense, TAL would have objected to the Club's decision to refuse to assume McAllister's defense, and attorney Novak would have been obligated to follow his client

- 16 -

TAL's instructions.  Assuming McAllister's defense would have resulted in little, if any, incremental cost to TAL, since the condition of the vessel – which was the basis for Portus' third party claim against McAllister – was also the basis for Portus' defense against TAL's claim.  TAL was  entitled to independent counsel, with no conflict of interest, to advise on this decision.  Independent counsel would have advised TAL to assume McAllister's defense in the third party action commenced by Portus.

66.     The Club breached its implied covenant of good faith and fair dealing by wrongfully and in bad faith failing to advise TAL of its conflict of interest or reservation of rights, directing TAL's attorney not to assume McAllister's defense, and then later denying coverage for TAL's claim for indemnification with respect to McAllister's attorneys' fees.  In doing so, the Club injured TAL's right to receive the benefits of the Insurance Contract.

67.     Because of the Club's unreasonable delay until December 2015 to notify TAL of its denial of coverage, because of the Club's failure to warn TAL that TAL would not be reimbursed by the Club for the attorneys' fees and costs incurred by McAllister if TAL declined to assume McAllister's defense, and because of the Club's failure to inform TAL of the conflict of interest that arose between TAL's interests and the Club's interests when the Club elected to deny McAllister's request that TAL assume McAllister's defense, TAL suffered prejudice and, therefore, the Club was estopped from denying TAL's claim for indemnification with respect to McAllister's attorneys' fees.

68.     As a result of the Club's breach, TAL has been caused to suffer damages in an amount to be proven at trial but not less than $100,000, plus interest and costs.

## AS AND FOR A THIRD CAUSE OF ACTION

### (Fraudulent Concealment; McAllister's Attorneys' Fees)

69.     TAL repeats and realleges the allegations contained in paragraphs 1 through 48 as if fully set forth herein.

70.     When Novak and the Club made the decision for TAL to decline McAllister's defense of Portus' third party claim in April 2014, the Club had a duty to disclose to TAL that if TAL declined to assume McAllister's defense, then TAL would not be reimbursed by the Club for the attorneys' fees and costs incurred by McAllister. This duty arose from: (1) the Club's partial and ambiguous statements to TAL, in Chuck Gornell's April 23, 2014 email, agreeing with Novak's "recommendation that TAL should decline McAllister's defense" and stating that "While it may well be that TAL will have to reimburse McAllister for attorneys' fees and costs in defending the Portus claim, that is not a given at this time" without advising that TAL would not be reimbursed by the Club for McAllister's attorneys' fees and costs if TAL declined McAllister's defense; (2) TAL's relationship with the Club as a member of the Club, and Novak's relationships with TAL as its attorney and with the Club as its appointed counsel designated from an approved list of attorneys maintained by the Club; (3) the Club Rules which require that the Club be treated as if it were Novak's client, in addition to TAL; and (4) the Club's superior knowledge that it would deny reimbursement based on TAL's waiver of the implied warranty of seaworthiness in the Atlantic Trader charter party with McAllister, of which the Club was well aware.

71.     Contrary to insurance industry practice and custom to identify potential conflicts of interest and to notify insureds of any reservation of rights, the Club failed to

- 18 -

disclose that TAL would not be reimbursed by the Club for the attorneys' fees and costs incurred by McAllister if TAL declined to assume McAllister's defense.   The Club intended for TAL to follow the Club's decision that TAL decline McAllister's defense, knowing that the Club would not have to bear the unnecessary expense of McAllister's attorneys' fees.

72.    TAL reasonably relied on the Club's material omission that TAL would not be reimbursed by the Club for the attorneys' fees and costs incurred by McAllister if TAL declined to assume McAllister's defense.  TAL reasonably expected that the Club would cover TAL for any claim by McAllister for reimbursement of its attorneys' fees and costs in defending against Portus' third party claim.  TAL suffered damage as a result of that reliance because TAL would have instructed its attorney, Novak, to defend McAllister against Portus' third party claim, had TAL been warned that it would not be reimbursed by the Club for McAllister's attorneys' fees and costs.

73.    As a result of the Club's fraudulent concealment, TAL has been caused to suffer damages in an amount to be proven at trial but not less than $100,000, plus interest and costs.

## AS AND FOR A FOURTH CAUSE OF ACTION

### (Negligent Misrepresentation; McAllister's Attorneys' Fees)

74.    TAL repeats and realleges the allegations contained in paragraphs 1 through 48 as if fully set forth herein.

75.    When the Club made its partial and ambiguous statements to TAL, in Chuck Gornell's April 23, 2014 email, agreeing with Novak's "recommendation that TAL should decline McAllister's defense" and stating that "While it may well be that

- 19 -

TAL will have to reimburse McAllister for attorneys' fees and costs and defending the Portus claim, that is not a given at this time," the Club made a material omission by not advising TAL that it would not be reimbursed by the Club for McAllister's attorneys' fees and costs if TAL declined McAllister's defense.

76.   When Novak and the Club made the decision for TAL to decline McAllister's defense of Portus' third party claim in April 2014, the Club had a duty to disclose to TAL that if TAL declined to assume McAllister's defense, then TAL would not be reimbursed by the Club for the attorneys' fees and costs incurred by McAllister. This duty arose from: (1) the Club's partial and ambiguous statements to TAL, in Chuck Gornell's April 23, 2014 email, agreeing with Novak's "recommendation that TAL should decline McAllister's defense" and stating that "While it may well be that TAL will have to reimburse McAllister for attorneys' fees and costs in defending the Portus claim, that is not a given at this time" without advising that TAL would not be reimbursed by the Club for McAllister's attorneys' fees and costs if TAL declined McAllister's defense; (2) TAL's relationship with the Club as a member of the Club, and Novak's relationships with TAL as its attorney and with the Club as its appointed Counsel designated from an approved list of attorneys maintained by the Club; (3) the Club Rules which require that the Club be treated as if it were Novak's client, in addition to TAL; and (4) the Club's superior knowledge that it would deny reimbursement based on TAL's waiver of the implied warranty of seaworthiness in the Atlantic Trader charter party with McAllister, of which the Club was well aware.

77.   At the time of the Club's partial and ambiguous statements to TAL in Chuck Gornell's April 23, 2014 email were made, the Club knew that if TAL declined to

assume McAllister's defense, then TAL would not be reimbursed by the Club for the attorneys' fees and costs incurred by McAllister.  In that regard, the Club was aware in April 2014 when it made the decision for TAL to decline to assume McAllister's defense that TAL had waived the implied warranty of seaworthiness in the Atlantic Trader charter party with McAllister, yet the Club unreasonably delayed approximately 20 months until December 2015 to deny coverage for TAL's claim for reimbursement with respect to McAllister's attorneys' fees on the ground that it involved a "contractual dispute" that "did not involve the American Club."

78.     The Club knew that TAL desired the information in Gornell's April 23, 2014 email, as well as the information materially omitted by the Club from that email (i.e., that if TAL declined to assume McAllister's defense, then TAL would not be reimbursed by the Club for McAllister's  attorneys' fees and costs), for a serious purpose -- namely, for the purpose of how TAL should respond to McAllister's demand that TAL defend and indemnify McAllister against the third-party claims asserted by Portus.

79.     TAL intended to rely and act upon, and did rely and act upon, the information in Gornell's April 23, 2014 email and the Club's material omission to timely advise TAL that if TAL declined to assume McAllister's defense, TAL would not be reimbursed by the Club for the attorneys' fees and costs incurred by McAllister.

80.     TAL reasonably relied on the Club's material omission that TAL would not be reimbursed by the Club for the attorneys' fees and costs incurred by McAllister if TAL declined to assume McAllister's defense, as TAL reasonably expected that the Club would cover TAL for any claim by McAllister for reimbursement of its attorneys' fees and costs in defending against Portus' third party claim.  TAL suffered damage as a result

- 21 -

of that reliance because otherwise TAL would have instructed its attorney, Novak, to defend McAllister against Portus' third party claim.

81.     As a result of the Club's negligent misrepresentation based on its material omission that TAL would not be reimbursed by the Club for the attorneys' fees and costs incurred by McAllister if TAL declined to assume McAllister's defense, TAL has been caused to suffer damages in an amount to be proven at trial but not less than $100,000, plus interest and costs.

## AS AND FOR A FIFTH CAUSE OF ACTION

### (Breach of Contract, for damages and a declaratory judgment; U.S. Government Cargo Claims)

82.     TAL repeats and realleges the allegations contained in paragraphs 1 through 48 as if fully set forth herein.

83.     At all relevant times, TAL was an insured member of the Club under the Insurance Contract.

84.     At all relevant times, TAL paid the required premiums and performed its obligations under the Insurance Contract.

85.     Claims were submitted to TAL for loss, damage and/or expense regarding U.S. Government cargo that TAL was carrying on the Atlantic Trader at the time of the March 4, 2013 Atlantic Trader incident.

86.     All of the U.S. Government TDRs with regard to the U.S. Government cargo claims were sent to TAL and to the Club within one year after the March 4, 2013 Atlantic Trader incident, but those claims were not settled with the U.S. Government within one year after the March 4, 2013 Atlantic Trader incident.  These claims were

- 22 -

actively discussed with the Club and Novak within one year after the March 4, 2013 Atlantic Trader incident.

87.     The Insurance Contract requires the Club to indemnify TAL for the U.S. Government cargo claims with regard to the Atlantic Trader incident.

88.     The U.S. Government cargo on the Atlantic Trader at the time of the March 4, 2013 Atlantic Trader incident was carried on COGSA terms.

89.     U.S. courts have ruled that the one year limitations period in COGSA does not apply to claims brought by the U.S. Government.

90.     Because the U.S. Government is not subject to the one year COGSA limitations period as a matter of law, TAL would have been subject to liability for the U.S. Government cargo claims even if TAL had not waived the one year COGSA limitation period in its contract with the U.S. Government.

91.     Because the U.S. Government is not subject to the one year COGSA limitations period as a matter of law, TAL did not breach the Club Rules by extending the limitations period without obtaining approval from the Club.

92.     Instead, the Club breached the Insurance Contract by denying TAL's claim for coverage for the U.S. Government cargo claims with regard to the Atlantic Trader incident.  The Club's denial of TAL's claim for coverage for the U.S. Government cargo claims with regard to the Atlantic Trader incident constituted a breach of, *inter alia,* Rule 2.8 of the Club Rules.

93.     As a result of the Club's breach, TAL has been caused to suffer damages and will continue to suffer damages in an amount to be proven at trial, and TAL is entitled to a declaratory judgment declaring that the Club is required to provide insurance

cover to TAL for the U.S. Government cargo claims with regard to the Atlantic Trader

incident, plus interest and costs.

## AS AND FOR A SIXTH CAUSE OF ACTION

**(Breach of Implied Covenant of Good Faith and Fair Dealing, for damages and
a declaratory judgment; U.S. Government Cargo Claims)**

94.    TAL repeats and realleges the allegations contained in paragraphs 1

through 48 as if fully set forth herein.

95.    At all relevant times, TAL was an insured member of the Club under the

Insurance Contract.

96.    Implicit in the Insurance Contract is an implied covenant of good faith and

fair dealing in which the Club covenanted that it would not do anything that would have

the effect of destroying or injuring TAL's right to receive the benefits of the Insurance

Contract.

97.    At all times prior to the Club's denial of TAL's claim for coverage for the

U.S. Government cargo claims with regard to the Atlantic Trader incident, TAL

reasonably expected that the Club would indemnify TAL for claims for loss, damage or

expenses with regard to U.S. Government cargo that TAL was carrying on the Atlantic

Trader.

98.    The Club's denial of coverage for the U.S. Government cargo claims with

regard to the Atlantic Trader incident on the ground that the Club "is not involved" with

these claims because they "have been filed well after they would have normally been

time barred" was wrongful and in bad faith, as TAL would have been subject to liability

for the U.S. Government cargo claims even if TAL had not waived the one year COGSA

limitation period in its contract with the U.S. Government since the U.S. Government is not subject to the one year COGSA limitations period as a matter of law.

99.     In addition, the Club's denial of TAL's claim for coverage for the U.S. Government cargo claims was wrongful and in bad faith, as TAL did not agree to extend the limitations period without obtaining approval from the Club since the U.S. Government is not subject to the one year COGSA limitations period as a matter of law.

100.     Significantly, the U.S. Government cargo claims have been handled since the Atlantic Trader incident by the Club's appointed counsel, Novak.  Further, contrary to its position that TAL is not covered, the Club included the U.S. Government's cargo claims in TAL's claims history after the normal one year COGSA statute of limitations had passed, which negatively affected TAL's P&I renewal premiums.

101.     The Club breached its implied covenant of good faith and fair dealing by failing to warn TAL that it would not be covered if the U.S. Government cargo claims were not resolved or filed in court within one year, and by wrongfully and in bad faith denying TAL's claim for coverage for the U.S. Government cargo claims with regard to the Atlantic Trader incident.  In doing so, the Club deprived TAL of its right to receive the benefits of the Insurance Contract.

102.     As a result of the Club's breach, TAL has been caused to suffer damages and will continue to suffer damages in an amount to be proven at trial.  TAL is entitled to a declaratory judgment declaring that the Club is required to provide insurance  cover to TAL for the U.S. Government cargo claims with regard to the Atlantic Trader incident.

## AS AND FOR A SEVENTH CAUSE OF ACTION

**(Breach of Contract; TAL Expenses to Save Perishable Cargo)**

103.   TAL repeats and realleges the allegations contained in paragraphs 1 through 48 as if fully set forth herein.

104.   At all relevant times, TAL was an insured member of the Club under the Insurance Contract.

105.   At all relevant times, TAL paid the required premiums and performed its obligations under the Insurance Contract.

106.   TAL incurred certain expenses in the sum of $107,336.69 as a result of the Atlantic Trader incident which the Florida District Court approved as part of its damages award in TAL's lawsuit against Portus.  TAL has not received reimbursement for these expenses from the Club.

107.   That $107,336.69 sum was paid by TAL to American Nautical Services, Norton Lily and Westerhaven Schiffahrt for the purpose of saving perishable cargo.

108.   The Insurance Contract requires the Club to indemnify TAL for the $107,336.69 that TAL paid to American Nautical Services, Norton Lily and Westerhaven Schiffahrt for the purpose of saving perishable cargo relating to the Atlantic Trader incident.

109.   The Club breached the Insurance Contract by denying TAL's claim for reimbursement of the $107,336.69 sum that TAL paid to American Nautical Services, Norton Lily and Westerhaven Schiffahrt for the purpose of saving perishable cargo relating to the Atlantic Trader incident.  The Club's denial of TAL's claim for reimbursement of the $107,336.69 sum that TAL paid to American Nautical Services,

- 26 -

Norton Lily and Westerhaven Schiffahrt for the purpose of saving perishable cargo relating to the Atlantic Trader incident constituted a breach of, *inter alia,* Rules 2.8, 2.17 and 2.18 of the Club Rules.

110.   As a result of the Club's breach, TAL has been caused to suffer damages in an amount to be proven at trial but not less than $107,336.69, plus interest and costs.

## AS AND FOR AN EIGHTH CAUSE OF ACTION

### (Tortious Interference with Contract, for damages and a declaratory judgment; TAL Expenses to Save Perishable Cargo)

111.   TAL repeats and realleges the allegations contained in paragraphs 1 through 48 as if fully set forth herein.

112.   At all relevant times, there was an agreement between TAL and Novak's firm, Horr, Novak & Shipp, P.A., pursuant to which Novak's firm was to represent, and provide legal services to, TAL in connection with TAL's action against Portus (the "Novak Contract").

113.   At all relevant times, the Club had knowledge of the Novak Contract.

114.   Novak's firm had a contractual duty to remit to TAL $42,934.68 of the funds in Novak's firm's trust account received from Portus, which represents Portus' payment of 40% of the $107,336.69 amount of court approved expenses paid by TAL to American Nautical Services, Norton Lily and Westerhaven Schiffahrt for the purpose of saving perishable cargo relating to the Atlantic Trader Incident.

115.   The Club intentionally procured Novak's firm's breach of the Novak Contract through the email dated April 8, 2016 from Chuck Gornell to Novak, in which the Club requested that Novak remit to the Club the full amount of the funds held in Novak's trust account that had been paid by Portus toward TAL's judgment against

- 27 -

Portus, despite the fact that $42,934.68 of the funds in Novak's trust account received from Portus represents Portus' 40% share of the $107,336.69 amount of expenses paid by TAL and for which TAL has not been reimbursed by the Club.  In doing so, the Club prevented TAL's attorney from paying to TAL funds in which the Club has no interest whatsoever and which belong to TAL – namely, the $42,934.68 portion of the funds in Novak's firm's trust account received from Portus with regard to expenses paid by TAL and for which TAL has not been reimbursed by the Club.

116.    Despite TAL's demand for at least the $42,934.68 portion of the funds in Novak's firm's trust account, the Club continues to interfere with TAL's superior property rights in and to, and TAL's right to immediate possession of, that $42,934.68 portion of the funds in Novak's firm's trust account.

117.    The Club's intentional procurement of the breach of the Novak Contract, as described above, was without justification.

118.    But for the Club's intentional procurement of the breach of the Novak Contract, as described above, Novak's firm would have remitted to TAL the $42,934.68 portion of the funds in Novak's firm's client trust account.

119.    As a result of the Club's interference with the Novak Contract, as described above, TAL has been caused to suffer damages in an amount to be proven at trial but not less than $42,934.68, and TAL is entitled to a declaratory judgment declaring that TAL is entitled to that $42,934.68 portion of the funds in Novak's trust account that Portus paid toward the judgment in TAL's action against Portus, plus interest and costs.

WHEREFORE, TAL requests judgment:

(1)     On the First Cause of Action, for damages in an amount to be proven at trial but not less than $100,000;

(2)     On the Second Cause of Action, for damages in an amount to be proven at trial but not less than $100,000;

(3)     On the Third Cause of Action, for damages in an amount to be proven at trial but not less than $100,000;

(4)     On the Fourth Cause of Action, for damages in an amount to be proven at trial but not less than $100,000;

(5)     On the Fifth Cause of Action, for damages in an amount to be proven at trial, and declaring that the Club is required to provide cover to TAL for the U.S. Government cargo claims with regard to the Atlantic Trader incident;

(6)     On the Sixth Cause of Action, for damages in an amount to be proven at trial, and declaring that the Club is required to provide cover to TAL for the U.S. Government cargo claims with regard to the Atlantic Trader incident;

(7)     On the Seventh Cause of Action, for damages in an amount to be proven at trial but not less than $107,336.69;

(8)     On the Eighth Cause of Action, for damages in an amount to be proven at trial but not less than $42,934.68, and declaring that TAL is entitled to the $42,934.68 portion of the funds in Novak's firm's trust account representing Portus' payment of 40% of the $107,336.69 amount of court approved expenses paid by TAL for the purpose of saving perishable cargo for which TAL has not been reimbursed by the Club; and

(9)      For interest and TAL's attorneys' fees, costs and disbursements; and

(10)     For such other and further relief and this Court may deem just and
appropriate.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: New York, New York
        February 10, 2017

CARTER LEDYARD & MILBURN LLP

By _____
     Gary D. Sesser
     Mark R. Zancolli

Two Wall Street
New York, New York 10005
Telephone: (212) 732-3200
Facsimile: (212) 732-3232
Email: sesser@clm.com
       zancolli@clm.com
*Attorneys for Plaintiff*
*TransAtlantic Lines LLC*

7911711.5